UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

CASE NO. 3:24-cv-00853-MOC-DCK

| | |
|---|---|
| EVEREST INDEMNITY INSURANCE COMPANY AND EVEREST NATIONAL INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>A & ASSOCIATES INC., CHRISTOPHER WORLEY, SHAMEL JEAN, VASYL NESVIT, and THE ESTATE OF RAYMOND GOODMAN, BY AND THROUGH ITS, ADMINISTRATRIX, LISA HAYES,<br><br>Defendants. | **AMENDED COMPLAINT FOR DECLARATORY JUDGMENT**<br>**(Non-Jury)** |

Plaintiffs Everest Indemnity Insurance Company and Everest National Insurance Company (collectively "Everest") allege and would respectfully show the Court the following:

**NATURE OF ACTION**

1. This is an insurance coverage action brought pursuant to the provisions of the Uniform Declaratory Judgment Act, as codified in 28 U.S.C. §§ 2201-2202, and Federal Rule of Civil Procedure 57.

**PARTIES**

2. Everest Indemnity Insurance Company is an insurance company organized and existing under the laws of the state of Delaware, with its principal place of business in the state of New Jersey. Everest Indemnity Insurance Company is an admitted surplus lines insurer in the state of North Carolina.

3. Everest National Insurance Company is an insurance company organized and existing under the laws of the state of Delaware, with its principal place of business in the state

of New Jersey. Everest National Insurance Company is an admitted insurer for certain lines of insurance in the state of North Carolina.

4. Defendant A & Associates Inc. ("A & A") is a corporation incorporated and existing under the laws of the state of Florida with its principal place of business in the state of Florida.

5. Defendant Christopher Worley ("Worley") is an individual who is a citizen of the state of North Carolina.

6. Defendant Shamel Jean ("Jean") is an individual who is a citizen of the state of North Carolina.

7. Defendant Vasyl Nesvit ("Nesvit") is an individual who is a citizen of the state of Oregon.

8. Defendant the Estate of Raymond Goodman ("Goodman"), by and through its administratrix, Lisa Hayes (the "Estate") is a citizen of the state of North Carolina.

9. This case involves the interpretation of insurance policies entered into in the state of Florida that are alleged to provide insurance coverage for an incident that occurred in the state of North Carolina.

10. Jurisdiction exists because there is complete diversity of citizenship between Everest and the Defendants, and the amount in controversy, including the potential costs of defending and indemnifying against the damages at issue in the Underlying Lawsuits (defined below), potentially exceeds $75,000.00. Therefore this Court has jurisdiction pursuant to 28 U.S.C. § 1332.

11. Venue is appropriate under 28 U.S.C. § 1391 because the policies at issue in this case are alleged to provide insurance coverage for an incident that occurred in this district.

# FACTUAL BACKGROUND

A. **Underlying Lawsuits**

12. On August 16, 2023, Nesvit filed a personal injury lawsuit against defendants A & A, Worley and Jean, and PFJ Southeast LLC d/b/a Pilot Travel Center 275, and Pilot Travel Centers LLC d/b/a Pilot Flying J ("Pilot") in the General Court of Justice, Superior Court Division, Mecklenburg County, North Carolina, Case No. 23CVS014489 (the "*Nesvit* Lawsuit") seeking to recover damages arising out of a shooting that occurred on October 3 or 4, 2022. On February 6, 2024, Nesvit filed an amended complaint, removing PFJ Southeast LLC d/b/a Pilot Travel Center 275 and adding Single Source Security LLC d/b/a Protos Security ("Protos") as a defendant. A copy of the amended complaint in the *Nesvit* Lawsuit is attached hereto as **Exhibit A**.

13. On August 17, 2023, the Estate filed a wrongful death lawsuit against defendants A & A, Worley, Jean, and PFJ Southeast LLC d/b/a Pilot Travel Center 275, and Pilot in the General Court of Justice, Superior Court Division, Mecklenburg County, North Carolina, Case No. 23CVS014632 (the "*Goodman* Lawsuit") seeking to recover damages arising out of a shooting that occurred on October 3 or 4, 2022. On February 6, 2024, the Estate filed an amended complaint, removing PFJ Southeast LLC d/b/a Pilot Travel Center 275 and adding Protos as a defendant. A copy of the amended complaint in the *Goodman* Lawsuit is attached hereto as **Exhibit B**.

14. The *Nesvit* Lawsuit and the *Goodman* Lawsuit will be collectively referred to as the Underlying Lawsuits.

15. The amended complaints filed in the Underlying Lawsuits allege that on the evening of October 3, 2022, or the early morning of October 4, 2022, Nesvit and Goodman were shot by an unknown assailant at the Pilot Travel Center 275 truck stop ("Truck Stop") in Charlotte, North Carolina.

16. The amended complaints filed in the Underlying Lawsuits allege that Pilot owned, managed, and/or operated the Truck Stop at the time of the shooting.

17. The amended complaints filed in the Underlying Lawsuits allege that Lackey was the manager for the Truck Stop at the time of the shooting and was responsible for the Truck Stop's operations, including conducting meetings with employees, managing employees, training employees, safety, and security.

18. The amended complaints filed in the Underlying Lawsuits allege that A & A provided security-related services at the Truck Stop at the time of the shooting.

19. The amended complaints filed in the Underlying Lawsuit allege that Worley was the manager at A & A's Charlotte office over the security group and was responsible for services provided by A & A and its different security sites, including the Truck Stop and for meeting with A & A's Charlotte-area security guards, staffing security guards at A & A's different job sites, including the Truck Stop, and managing and training the Charlotte-area security guards, safety, and security.

20. The amended complaints filed in the Underlying Lawsuits allege that Jean was an A & A security guard at the time of the shooting providing security services at the Truck Stop.

21. The amended complaints filed in the Underlying Lawsuits allege that Protos provided security-related services at the Truck Stop at the time of the shooting.

22. The amended complaints filed in the Underlying Lawsuits include causes of action against Pilot and Lackey for negligence, gross negligence and premises liability and a cause of action against A & A, Worley, Jean, and Protos for negligence and gross negligence.

23. Everest Indemnity Insurance Company is currently defending A & A, Worley, and Jean in the Underlying Lawsuits under a full reservation of rights.

**B.    Policies**

24. Everest Indemnity Insurance Company issued policy no. 91MLN00302-221 to A & A for the period May 12, 2022 to May 12, 2023 (the "Primary Policy"). A true and correct copy of the Primary Policy is attached as **Exhibit C**, and the terms of the Primary Policy are incorporated as if fully stated here.

25. The Primary Policy includes two coverage parts: (1) Commercial General Liability ("CGL") and Staffing Services Industry Professional Liability ("Professional Liability").

26. The CGL coverage part provides that Everest Indemnity Insurance Company "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or' property damage' to which this insurance applies … only if … [t]he 'bodily injury' or 'property damage' occurs during the policy period."

27. The CGL coverage part includes an endorsement entitled, "Staffing Industry Coverage Endorsement," form ECG 04 780 08 16, provides, in part:

> This endorsement modifies insurance provided under the following:
>
> >   COMMERCIAL GENERAL LIABILITY COVERAGE PART
> >   * * *
>
> **3.**    The following Exclusions are added to the policy:
>
> This insurance does not apply to:

5

**B.** "Bodily injury" or "property damage" or "personal and advertising injury" arising out of a "wrongful act" in the rendering of, or failure to render, any professional service for your client. For the purposes of this exclusion, "wrongful act" shall mean any actual or alleged error, omission, misstatement, or misleading statement by you or by any person for whose acts you are legally responsible during the course of providing "staffing services" to your client.

**C.** "Bodily injury" or "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service. …

* * *

**SECTION V – DEFINITIONS** is amended as follows:

* * *

**3.** The following definitions are added:

**a.** "PEO service" means staffing related services as a Professional Employer Organization (PEO) you provide to your clients and to "PEO workers" in connection with employment of such workers.

**b.** "PEO worker" means a person you lease to your client under a written "PEO service" agreement or contract.

**c.** "Staffing services" means services provided by a staffing company to their clients including but not limited to:

**(1)** Staffing related administrative services provided by an Administrative Services Organization (ASO).

**(2)** "PEO Service";

**(3)** Staffing related services provided to your clients for the recruitment, selection and placement of person for employment with a client.

**(4)** Vendor Management Service (VMS), means the facilitation, purchase and management of "staffing services" for clients including the placement and fulfillment of orders for "staffing services works".

**(5)** Temporary, contingent or contract placement services;

      **(6)**    Services performed for a client company to supply that client with a "staffing services worker";

      **(7)**    Services performed on behalf of your client by a "staffing services worker" who is not a direct hire or permanent placement.

    **d.**    "Stafing services worker" means a person who is furnished by you to your client to perform the duties to which you have agreed.

28. The CGL coverage part also includes an endorsement entitled, "Total Abuse or Molestation Exclusion," form ECG 21 541 01 03, which provides:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

**a.**    "Bodily injury", "property damage" or "personal and advertising injury" for which any insured may be liable by reason of the actual, alleged or threatened abuse or molestation of any person or any person, persons or organizations; or

**b.**    "Bodily injury", "property damage" or "personal and advertising injury" for which any insured may be held liable by reason of:
    **(1)**    The employment of;
    **(2)**    The investigation of;
    **(3)**    The supervision of;
    **(4)**    The reporting or failure to report to the proper authorities of;
    **(5)**    The retention or reassignment of; or
    **(6)**    Any other alleged or actual relationship, contract, agreement or activity with any person, persons or organization:
    **(1)**    accused or guilty of; or
    **(2)**    who had or should have had actual, implied or imputed knowledge of

the actual, alleged or threatened abuse or molestation of any person.

29. The Professional Liability coverage part provides that Everest Indemnity Insurance Company "will pay on behalf of the insured those sums that the insured becomes

legally obligated to pay as 'damages' because of any 'claim' arising out of a 'wrongful act' that occurs during the 'policy period'…."

30. The coverage afforded under the Professional Liability coverage part is subject to a number of exclusions, including:

**SECTION V – EXCLUSIONS**

This insurance does not apply to any "claim":

\* \* \*

**2.** Based upon, attributable to, or arising out of "bodily injury", "property damage" "personal and advertising injury", or "abusive act."

**14.** Based upon, attributable to, or arising out of any services performed by any:

   **a.** Doctor, dentist, armed security guard, pilot, person engaged in pyrotechnic activities or anyone acting as a general contractor.

\* \* \*

31. Everest National Insurance Company issued policy no. 91CU001542-221 to A & A for the period May 12, 2022 to May 12, 2023 (the "Umbrella Policy"). A true and correct copy of the Umbrella Policy is attached as **Exhibit D**, and the terms of the Umbrella Policy are incorporated as if fully stated here.

32. The Umbrella Policy provides that Everest National Insurance Company "will pay on behalf of the 'insured' those sums in excess of the 'retained limit' that the 'insured' becomes legally obligated to pay as damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies. …"

33. The Umbrella Policy includes an endorsement entitled, "Professional Liability Coverage Following Form," form no. EUM 21 983 05 16, which provides:

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE PART

The following exclusion is added to the **Exclusions** Section:

Any liability for, caused by, arising out of, or in connection with the rendering of or failure to render any professional service, except to the extent that such insurance is provided by a policy listed in the Schedule of "underlying insurance", and for no broader coverage than is provided by such policy.

The Primary Policy is listed in the Schedule of "underlying insurance."

34. The Umbrella Policy includes an endorsement entitled, "Exclusion – Abuse or Molestation," form EUM 21 919 05 16, which provides:

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY COVERAGE PART

The following exclusion is added to the **Exclusions** Section:

This insurance does not apply to:

**1.** The actual or threatened abuse or molestation of any person while in the care, custody or control of any insured; or
**2.** The negligent:
  **a.** Employment;
  **b.** Investigation;
  **c.** Supervision;
  **d.** Reporting to the proper authorities, or failure to so report; or
  **e.** Retention;
  of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by paragraph **1.** above.

35. The damages sought in the Underlying Lawsuits are barred and/or excluded under the above-referenced provisions of the Primary Policy and Umbrella Policy.

36. Everest is entitled to a judicial declaration that it owes no duty of defense or indemnification with regard to the claims at issue in the Underlying Lawsuits.

## FOR A FIRST DECLARATION
**(Professional Services Exclusions)**

37. The allegations contained in paragraphs 1 through 36 are incorporated as if fully stated here.

38. The CGL coverage part of the Primary Policy provides that coverage is not afforded for "bodily injury," "property damage," or "personal and advertising injury" arising out of a "wrongful act" in the rendering of, or failure to render, and professional service for your client."

39. The CGL coverage part of the Primary Policy further provides that coverage is not afforded for "bodily injury" or "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service.

40. The Professional Liability coverage part of the Primary Policy provides that coverage is not afforded for any "claim" based upon, attributable to, or arising out of any serviced performed by any armed security guard.

41. The Umbrella Policy provides that coverage is not afforded for any liability for, caused by, arising out of, or in connection with the rendering of or failure to render any professional service, except to the extent that such insurance is provided by the Primary Policy, and for no broader coverage than is provided by the Primary Policy.

42. The amended complaints in the Underlying Lawsuits allege that the underlying plaintiffs' injuries arise out of the failure to render security guard services and were caused by such failure.

43. Security guard services are professional services.

44. At the time of the shooting, A & A provided armed security guard services at the Truck Stop, and Jean was an armed security guard licensed by the state of North Carolina.

45. Accordingly, there is no coverage under either the Primary Policy or the Umbrella Policy, and there is no duty to defend or indemnify A & A, Worley, Jean, or any other qualifying

10

Case 3:24-cv-00853-MOC-DCK    Document 6    Filed 10/02/24    Page 10 of 16

insured in connection with the claims and damages alleged in the Underlying Lawsuits because coverage is barred by these exclusions.

**FOR A SECOND DECLARATION**
(Abuse Exclusions)

46. The allegations contained in paragraphs 1 through 45 are incorporated as if fully stated here.

47. The CGL coverage part of the Primary Policy provides that coverage is not afforded for "bodily injury," "property damage," or "personal and advertising injury" for which any insured may be liable by reason of the actual, alleged, or threatened abuse of any person or any persons, or organizations.

48. The Professional Liability coverage part of the Primary Policy does not afford coverage for any claim based upon, attributable to, or arising out of "abusive act," which is defined as "any act or series of acts of actual or threatened abuse or molestation done to any person …."

49. The Umbrella Policy does not afford coverage for actual or threatened abuse of any person while in the care, custody, or control of any insured or the negligent employment, investigation, supervision, reporting to the proper authorities or failure to so report, or retention of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded.

50. The shooting was abuse and an "abusive act."

51. Accordingly, there is no coverage under either the Primary Policy or the Umbrella Policy, and no duty to defend or indemnify A & A, Worley, Jean, or any other qualifying insured in connection with the claims and damages alleged in the Underlying Lawsuits because coverage is barred by these exclusions.

## FOR A THIRD DECLARATION
### (No Coverage Under the Professional Liability Coverage Part for "Bodily Injury," "Property Damage," or "Personal and Advertising Injury")

52. The allegations contained in paragraphs 1 through 51 are incorporated as if fully stated here.

53. The Professional Liability coverage part of the Primary Policy does not afford coverage for any claim based upon, attributable to, or arising out of "bodily injury," "property damage," or "personal and advertising injury."

54. The Underlying Lawsuits seek recovery for damages based upon, attributable to, or arising out of the injuries sustained from the shooting.

55. Accordingly, there is no coverage under the Professional Liability coverage part of the Primary Policy, and no duty to defend or indemnify A & A, Worley, Jean, or any other qualifying insured in connection with the claims and damages alleged in the Underlying Lawsuits because coverage is barred by this exclusion.

## FOR A FOURTH DECLARATION
### (Only One "Occurrence" or "Claim")

56. The allegations contained in paragraphs 1 through 55 are incorporated as if fully stated here.

57. The CGL coverage part of the Primary Policy provides in Section III – Limits of Insurance:

> **1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:
>
> **a.** Insureds;
>
> **b.** Claims made or "suits" brought; or
>
> **c.** Persons or organizations making claims or bringing "suits".

\* \* \*

5. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage **A**; and

   b. Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence."

\* \* \*

58. The Primary Policy Professional Liability coverage part's definition of "claim" provides that "[m]ultiple 'claims' arising from the same or series of related or repeated acts, errors, omissions, or from any continuing acts, errors, or omissions shall be considered a single 'claim' for purposes of this Policy, irrespective of the number of claimants or insureds involved in the 'claim.'"

59. The Professional Liability coverage part of the Primary Policy provides in Section III – Limits of Insurance & Deductible:

   **A. Limits of Insurance**

   1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

      a. Insureds;

      b. Claims made or "suits" brought; or

      c. Persons or organizations making claims or bringing "suits".

   \* \* \*

   3. Subject to paragraph **2.** above, the most we will pay for the sum of all "damages" arising out of each "claim" is the Each "Claim" Limit stated in Item 4.B. of the Declarations.

   \* \* \*

60. The CGL coverage part of the Primary Policy includes an anti-stacking provision, "Limitation – Stacking of Occurrence Limits of Insurance," form ECG 25 511 12 05, which provides:

**Two or More Coverage Forms or Policies Issued By Us**

> If this policy and any other policy, policies or coverage form(s) issued to you by us or any of our affiliated companies apply to the same or related damages, the most that will be paid by us and our affiliated companies either individually or collectively for the sum of all those damages is the single largest applicable Each Occurrence Limit or similar per occurrence limit of insurance available under any one of those policies or coverage forms. Same or related damages include the continuation of injury or damages from a prior policy period into a subsequent policy period, or any injury or damage resulting from the same cause or "occurrence."
>
> However, this provision does not apply to umbrella or similar policies or coverage forms that are purchased specifically to apply in excess of another policy or coverage form that is scheduled as underlying insurance.
>
> In no event will coverage be provided during the policy period after (1) the applicable aggregate Limit of Insurance under any one coverage form or policy has been exhausted, or (2) the applicable aggregate Limit of Insurance under any one coverage form or policy would have been exhausted had all covered claims been submitted under that one coverage form or policy rather than under two or more coverage forms or policies.
>
> The terms of this endorsement will govern as respect the application of any limits of insurance. If this policy or coverage form contains any other language regarding limits of insurance that is in conflict with the terms of this endorsement, such other language is subject to the terms of this endorsement.

61. The Umbrella Policy provides in Section II – Limits of Insurance & "Self-Insured Retention:"

**Limits of Insurance**

> 1. The Limits of Insurance shown in Item 3. of the Declarations and rules below state the most we will pay for all damages under this policy regardless of the number of:
>
>    a. "Insureds";
>
>    b. Claims made or "suits" brought; or

14

Case 3:24-cv-00853-MOC-DCK    Document 6    Filed 10/02/24    Page 14 of 16

      **c.**    Persons or organizations making claims or bringing "suits".

* * *

    **4.**    Subject to paragraphs 2. and 3. above, the Each Occurrence/Offense Limit stated in Item 3.C. of the Declarations is the most we will pay for the sum of all damages arising out of any one "occurrence" or offense.

* * *

62. The damages and acts alleged in the Underlying Lawsuits are one "occurrence" or "claim."

63. Thus, to the extent that Everest has a duty to indemnify A & A, Worley, Jean, or any other qualifying insured in connection with the claims and damages alleged in the Underlying Lawsuits, which Everest has shown by the above that there is no duty to indemnify, the Primary Policy affords coverage up to the single limit in the amount of $1,000,000.

**WHEREFORE,** Everest asks the Court to inquire into this matter and declare that (1) the Primary Policy and Umbrella Policy do not provide liability coverage for the Underlying Lawsuits, (2) neither Everest Indemnity Insurance Company nor Everest National Insurance Company has a duty to defend or indemnify A & A, Worley, Jean, or any other qualifying insured with respect to any claims arising out of the Underlying Lawsuits, (3) Everest is not liable for the payment of the judgment entered against A & A, Worley, Jean, or any other qualifying insured, (4) to the extent any coverage is afford, which it is not, the coverage potentially available under the Primary Policy does not exceed $1,000,000, and (5) for such other and further relief as the Court may deem just and proper.

*Signature on next page*

CLYDE & CO US LLP

By:    s/Janice Holmes
     Janice Holmes (N.C. Bar No. 48533)
     1775 Pennsylvania Ave. NW, Fourth Floor
     Washington, DC 20006
     Telephone: (202) 747-5178
     Facsimile:  (202) 747-5150
     janice.holmes@clydeco.com

     Attorney for Everest Indemnity Insurance Company and Everest National Insurance Company

October 2, 2024